1  Barry Himmelstein (SBN 157736)
   barry@himmellaw.com
2  HIMMELSTEIN LAW NETWORK
   2000 Powell St.
3  Suite 1605
   Emeryville, CA 94608-1861
4  510-450-0782 (phone)
   510-380-6147 (fax)
5
   Attorney for Plaintiff Lizabeth Hoffman
6

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                  WESTERN DIVISION

11
                                  **CV12-09113** DSF (FFMx)
12  LIZABETH HOFFMAN, on behalf )  Case No.:
    of herself and all others  )
13  similarly situated,        )  **COMPLAINT FOR VIOLATIONS OF**
                               )  **THE UNFAIR COMPETITION LAW,**
14          Plaintiff,         )  **THE CONSUMER LEGAL REMEDIES**
                               )  **ACT, THE FAIR DEBT**
15      v.                     )  **COLLECTION PRACTICES ACT,**
                               )  **AND FOR DECLARATORY RELIEF**
16  CEDARS-SINAI MEDICAL       )
    CENTER, a California       )  **CLASS ACTION**
17  Corporation; GENERAL       )
    ANESTHESIA SPECIALISTS     )  **DEMAND FOR JURY TRIAL**
18  PARTNERSHIP; CEDARS-SINAI  )
    IMAGING MEDICAL GROUP, A   )
19  PROFESSIONAL CORPORATION;  )
    MEDICREDIT, INC., a        )
20  Missouri Corporation; THE  )
    OUTSOURCE GROUP, INC., a   )
21  Missouri Corporation; GRANT)
    & WEBER, a California      )
22  Corporation; and DOES 1-10,)
                               )
23          Defendants.        )
                               )
24  _____)

25

26

27

28

                        1
                     Complaint

Plaintiff LIZABETH HOFFMAN alleges, on behalf of herself and all others similarly situated:

### JURISDICTION

1.   This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k(d), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

### NATURE OF THE ACTION

2.   Federal law prohibits "balance billing" enrollees of Medicare Advantage coordinated care plans. "Balance billing" is the practice of billing patients for "the difference between the amount the provider charges an individual for a service and the sum of the amount the individual's health insurer . . . will pay for the service plus any cost-sharing by the individual," *i.e.*, the enrollee's "deductibles, coinsurance, and copayments" under the plan.  42 C.F.R. § 422.2.

3.   Plaintiff, a member of the largest Medicare Advantage coordinated care plan, was taken by ambulance to Cedars-Sinai Medical Center ("Cedars-Sinai"), where she was treated in the Emergency Department, admitted to the hospital, and later discharged after multiple surgeries.  Cedars-Sinai's physician billing service, anesthesiologists' billing service, and radiologists' billing service were each unable to agree with Plaintiff's insurer on the amounts due for certain services.  Plaintiff's deductible, coinsurance, and

Complaint

copayment responsibility for each of these services is $0 under her plan.

4.   Instead of resolving these disputes with Plaintiff's insurer, these providers "balance billed" Plaintiff for the disputed amounts, and assigned the balance billings to a collection agency (or threatened to do so), damaging Plaintiff's credit.  Plaintiff brings this action, on behalf of herself and all others similarly situated, to enjoin defendants from balance billing enrollees of Medicare Advantage coordinated care plans, and to recover any improperly collected amounts.

**PARTIES**

5.   Plaintiff LIZABETH HOFFMAN ("Hoffman") is an individual residing in Los Angeles County, California.

6.   Defendant CEDARS-SINAI MEDICAL CENTER is a California Corporation having its principal place of business in Los Angeles County, California.

7.   Defendant GENERAL ANESTHESIA SPECIALISTS PARTNERSHIP MEDICAL GROUP ("Cedars Anesthesia") is a partnership having its principal place of business in Los Angeles County, California.

8.   Defendant CEDARS-SINAI IMAGING MEDICAL GROUP, A PROFESSIONAL CORPORATION ("Cedars Imaging"), is a California Corporation having its principal place of business in Los Angeles County, California.

9.   Defendant MEDICREDIT, INC. ("Medicredit") is a Missouri corporation having its principal place of business in the State of Missouri.

10. Defendant THE OUTSOURCE GROUP, INC. ("Outsource Group") is a Missouri Corporation having its principal place of business in the State of Missouri.  Medicredit is a wholly-owned subsidiary of Outsource Group.

11. Defendant GRANT & WEBER ("Grant & Weber") is a California Corporation having its principal place of business in Los Angeles County, California.

12. Plaintiff is ignorant of the true names and capacities of the defendants sued herein under the fictitious names Does 1 through 10.  Each of the fictitiously named defendants is responsible in some manner for the acts herein alleged, and proximately caused Plaintiff's damages.  Plaintiff will seek leave of court to amend this complaint to allege said defendants' true names and capacities as soon as Plaintiff ascertains them.

13. At all times mentioned herein, each defendant was the agent for each other defendant, and was acting in the course and scope of such agency.

**VENUE**

14. Venue in this district and division is proper because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the County of Los Angeles.

**"BALANCE BILLING" ENROLLEES OF MEDICARE ADVANTAGE COORDINATED CARE PLANS IS PROHIBITED**

15.  42 C.F.R. § 422.2 defines "balance billing" as "an amount billed by a provider that represents the difference between the amount the provider charges an individual for a service and the sum of the amount the individual's health insurer (for example, the original Medicare program) will pay for the service plus any cost-sharing by the individual."  "Cost-sharing includes deductibles, coinsurance, and copayments." *Id*.  "Coinsurance is a fixed percentage of the total amount paid for a health care service that can be charged to an MA [Medicare Advantage] enrollee on a per-service basis.  Copayment is a fixed amount that can be charged to an MA plan enrollee on a per-service basis."  *Id*.

16.  Balance billing enrollees of Medicare Advantage coordinated care plans is prohibited, regardless of whether the provider is a Medicare "participating" or "non-participating" provider, and regardless of whether the enrollee's Medicare Advantage plan has a contractual relationship with the provider.  Providers of services to enrollees of Medicare Advantage coordinated care plans may *only* bill the enrollee for plan allowed cost-sharing.

17. As the Centers for Medicare and Medicaid Services ("CMS") explains:

An important protection for
beneficiaries when they obtain plan-
covered services in an HMO [Health
Maintenance Organization], PPO [Preferred
Provider Organization], or RPPO [Regional
PPO], is that they do not pay more than
plan-allowed cost-sharing. Providers who
are permitted to balance bill must obtain
this balance billing from the MAO
[Medicare Advantage Organization].[1]

Under Original Medicare rules, an
Original Medicare participating provider
(hereinafter referred to as a
participating provider) is a provider that
signs an agreement with Medicare to always
accept assignment. . . . Participating
providers may never balance bill because
they have agreed to always accept the
Medicare allowed amount as payment in
full.

The rules governing balance billing as
well as the rules governing the MA payment

[1] As CMS further explains: "No balance billing: . . .
an enrollee is responsible for paying non-contracted
providers only the plan-allowed cost-sharing for
covered services. The MAO [Medicare Advantage
Organization], not the enrollee, is obligated to pay
balance billing when it is allowed under Medicare
rules." *Id.*, § 10.11.

6
Complaint

of MA-plan non-contracting and Original-Medicare non-participating providers are listed below by type of provider.

- <u>Contracted provider</u>. There is no balance billing paid by either the plan or the enrollee.
- <u>Non-contracting, participating provider</u>. There is no balance billing paid by either the plan or the enrollee;
- <u>Non-contracting, non-participating provider</u>. The MAO owes the non-contracting, non-participating (non-par) provider the difference between the member's cost-sharing and the Original Medicare limiting charge, which is the maximum amount that Original Medicare requires an MAO to reimburse a provider.  The enrollee only pays plan-allowed cost-sharing, which equals:
  - o The copay amount, if the MAO uses a copay for its cost-sharing; or
  - o The coinsurance percentage multiplied by the limiting charge, if the MAO uses a

> coinsurance method for its cost-
> sharing.

*CMS Manual System, Pub. 100-16, Medicare Managed Care, Chapter 4, Benefits and Beneficiary Protections, §
10.22 (Rev. 97, May 20, 2011) (available at
http://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R97MCM.pdf.
See* 42 C.F.R. §§ 422.132, 422.214, 422.504(g).

18. As CMS further explains, these limitations apply to contracted providers even if the MAO subsequently denies coverage:

> CMS considers a contracted plan provider
> an agent of the MAO offering the plan.
> Consequently, the services and referrals
> s/he gives are considered plan-approved
> unless notice is provided that the
> services will not be covered. An enrollee
> who receives a service or item from a
> contracted plan provider or a provider
> referred by a contracted plan provider is
> therefore held harmless and need not pay
> more than the plan-allowed cost-sharing
> (e.g., coinsurance, copays and
> deductibles). The enrollee is held
> harmless independent of whether:
>
> o The service is otherwise plan
> covered;

o The enrollee was advised of the need
for a referral; and

o The referral was properly done.

*Id.*, § 10.11.

19.  These federal limitations on liability are echoed in the Evidence of Coverage for the Plan:

As a member of our plan, an important
protection for you is that you only have
to pay your cost-sharing amount when you
get services covered by our plan.  We do
not allow providers to add additional
separate charges, called "balance
billing."  This protection (that you never
pay more than your cost-sharing amount)
applies even if we pay the provider less
than the provider charges for a service
and even if there is a dispute and we
don't pay certain provider charges.

Kaiser Permanente, *Evidence of Coverage for Senior Advantage*, Ch. 4, § 1.3 (2013).

## FACTUAL ALLEGATIONS

20.  Plaintiff is, and at all relevant times was, enrolled in Kaiser Permanente Senior Advantage, a Medicare Advantage coordinated care plan administered by Kaiser Foundation Health Plan, Inc. ("Kaiser") pursuant to Centers for Medicare and Medicaid Services ("CMS") contract number H0524 (the "Plan").

21. According to data provided by CMS, as of July 1, 2012, the Plan is by far the largest Medicare Advantage plan in the United States, with 847,398 enrollees.  The second largest Medicare Advantage plan has less than half this number of enrollees.

22. Defendant Cedars-Sinai is the largest non-profit hospital in the western United States.

23. Cedars-Sinai operates an Emergency Department at its facilities in the City of Los Angeles (the "Emergency Department").

24. According to Cedars-Sinai's annual reports, there were 79,707 Emergency Department visits in the year ended June 30, 2011; 81,669 Emergency Department visits in the year ended June 30, 2010; 79,624 Emergency Department visits in the year ended June 30, 2009; and 77,964 Emergency Department visits in the year ended June 30, 2008.

25. In a complaint filed in 2007, Cedars-Sinai alleged that:

> Kaiser expressly instructs patients, in emergencies, to seek treatment from the nearest emergency room.  Thus, Kaiser . . . Patients living in or near the West Los Angeles area of the City of Los Angeles, California, were likely to seek necessary emergency treatment from a hospital in close

proximity, which in many cases would
be Cedars-Sinai.

Indeed, Cedars-Sinai provided
extensive inpatient services to
Patients insured by Kaiser who visited
Cedars-Sinai for emergency treatment.
In some cases, Patients remained
hospitalized for more than ten (10)
days during which Cedars-Sinai
provided extensive hospital services.

Although Kaiser has made certain
payments directly to Cedars-Sinai for
health care expenses incurred by some
of the Patients, these payments are
far less than the "billed" charges . .
. .

In fact, with respect to certain
claims, Kaiser has refused to make any
payment to Cedars-Sinai . . . . [¶]
[W]hen Cedars-Sinai bills for the
services provided to these patients,
Kaiser refuses payment (in part or in
full) by asserting that the patient
was stable for transfer.

26.   On June 29, 2011, Plaintiff was seriously
injured in an automobile accident, and was transported
by ambulance to the Emergency Department, where she
received "emergency services" and/or "urgently needed

services," as defined by 42 C.F.R. § 422.113(b).
Plaintiff was admitted to the hospital, and underwent
multiple surgeries.  At some point during her stay,
Plaintiff's treating physician at Cedars-Sinai and
Kaiser were unable to agree on whether Plaintiff was
stable enough to transfer to a Kaiser hospital.
Pursuant to 42 C.F.R. 422.113(b)(3), "[t]he physician
treating the [Medicare Advantage] enrollee must decide
when the enrollee may be considered stabilized for
transfer or discharge, and that decision is binding on
the MA organization."

27. Plaintiff was discharged from Cedars-Sinai on
July 9, 2011.  Since Plaintiff's discharge, Cedars-
Sinai, Cedars Anesthesia, and Cedars Imaging have
"balance billed" Plaintiff for a total of over $3,900.

### Cedars-Sinai Balance Billings

28. In July 2011, Cedars-Sinai billed Kaiser
$1,186.00 for physician services provided to Plaintiff
by David Pregerson, M.D. in its Emergency Department on
June 29, 2011.

29. On or about July 29, 2011, Kaiser sent
Plaintiff and Cedars-Sinai an Explanation of Benefits,
a copy of which is attached as Exhibit A (redacted to
remove Plaintiff's personal information), which stated
that of the $1,186.00 billed by Cedars-Sinai for Dr.
Pregerson's services, a total of $241.01 was allowed,
$944.99 was disallowed, and that Plaintiff's copayment,
coinsurance, and deductible responsibility for these

Complaint

charges was $0.00.  The Explanatory Remarks stated that "CONTRACTUAL PROVIDER DISCOUNT HAS BEEN APPLIED." Kaiser remitted payment of $241.01 to Cedars-Sinai for the allowed amount, which payment was received by Cedars-Sinai on or about August 4, 2011.

30. On or about November 10, 2011, Cedars-Sinai mailed Plaintiff a "Notice of Delinquency," a copy of which is attached as Exhibit B (redacted to remove Plaintiff's personal information), which restated the charges for Dr. Pregerson's services for which Cedars-Sinai had previously billed Kaiser; reflected Kaiser's payment of $241.01; and stated a "Patient Responsibility" of $944.99 and a "Current Balance You Owe" of $944.99.  The Notice of Delinquency stated that if payment was not received within 15 days, "your account will be considered for assignment to a collection agency."

31. On or about January 10, 2012, defendant Medicredit mailed Plaintiff correspondence, a copy of which is attached as Exhibit C (redacted to remove Plaintiff's personal information), which referenced "Cedars-Sinai E.D. (PHYSICIANS SERVICES);" stated an amount of $944.99; and stated that:

> This letter has been sent to you by a collection agency.  This is an attempt to collect a debt . . . . [¶]  As of the date of this letter you owe $944.99 on the above-mentioned account. . . . . [¶]  As

required by law, a negative credit report
reflecting on your credit record may be
submitted to a credit-reporting agency if
you fail to fulfill the terms of your
credit obligations.

32. On or about April 4, 2012, Medicredit reported
the account to Experian, one of the major credit
reporting agencies, as an unpaid collection account in
the amount of $945.  In May 2012, Medicredit reported
the account to Experian as a "seriously past due"
collection account, with a balance due of $975.  As a
result of these reports, Plaintiff's Experian credit
score declined by 129 points, and her Experian credit
rating declined from "Excellent" to "Fair."

33. In 2008, Outsource Group acquired J.J. Mac
Intyre Co., Inc., which was then merged out of
existence.

34. In April 2012, Outsource Group, doing business
as J.J. Mac Intyre Co., reported the account to
Equifax, one of the major credit reporting agencies, as
an unpaid collection account in the amount of $945,
with a first delinquency date of June 2011.  As a
result of this report, Plaintiff's Equifax credit score
declined by 113 points, and her Equifax credit rating
declined from "Excellent" to "Fair."

35. In May 2012, Medicredit reported the account to
TransUnion, one of the major credit reporting agencies,
as an unpaid collection account, with a balance due of

$975.  As a result of this report, Plaintiff's TransUnion credit score declined by 109 points, and her TransUnion credit rating declined from "Excellent" to "Fair."

36.  In July 2011, Cedars-Sinai billed Kaiser $1,689.00 for physician services provided to Plaintiff by Marko Bukur, M.D. in its Emergency Department on June 29, 2011.

37.  On or about August 5, 2011, Kaiser sent Plaintiff and Cedars-Sinai an Explanation of Benefits, a copy of which is attached as Exhibit D (redacted to remove Plaintiff's personal information), which stated that of the $1,689.00 billed by Cedars-Sinai for Dr. Bukur's services, a total of $208.04 was allowed, $1480.96 was disallowed, and that Plaintiff's copayment, coinsurance, and deductible responsibility for these charges was $0.00.  The Explanatory Remarks stated, with respect to the first charge, that "CONTRACTUAL PROVIDER DISCOUNT HAS BEEN APPLIED," and with respect to the remaining charges, that "THIS PROCEDURE IS NORMALLY INCLUDED IN THE COST OF THE PRIMARY PROCEDURE."  Kaiser remitted payment of $208.04 to Cedars-Sinai for the allowed amount, which payment was received by Cedars-Sinai on or about August 12, 2011.

38.  On or about October 1, 2011, Kaiser sent Cedars-Sinai a revised Explanation of Benefits, a copy of which is attached hereto as Exhibit E (redacted to

remove Plaintiff's personal information), which stated that of the $1,689.00 billed by Cedars-Sinai for Dr. Bukur's services, a total of $347.63 was allowed, $1,341.37 was disallowed, and that Plaintiff's copayment, coinsurance, and deductible responsibility for these charges was $0.00.  The Explanatory Remarks stated, with respect to the first charge, "ADJUSTED TO CORRECT CONTRACT PAYMENT RATE," and with respect to the remaining charges, that "THIS AMOUNT HAS BEEN APPROVED BY MEDICARE.  THE MEMBER IS NOT RESPOSIBLE FOR THE DIFFERENCE."  Kaiser remitted payment of $139.59 to Cedars-Sinai for the additional allowed amount, which payment was received by Cedars-Sinai on or about October 6, 2011.

39. On or about November 10, 2011, Cedars-Sinai mailed Plaintiff a "Balance Due Notice," a copy of which is attached as Exhibit F (redacted to remove Plaintiff's personal information), which restated the charges for Dr. Bukur's services for which Cedars-Sinai had previously billed Kaiser; reflected Kaiser's payments of $347.63; and stated a "Patient Responsibility" of $208.04 and a "Current Balance You Owe" of $208.04.  The Balance Due Notice stated that it "represents charges that are due from you, as our system shows no medical insurance is outstanding for payment."

40. On or about March 21, 2012, defendant Medicredit mailed Plaintiff correspondence, a copy of

which is attached as Exhibit G (redacted to remove
Plaintiff's personal information), which referenced
"Cedars-Sinai E.D. (PHYSICIAN BILLING);" stated an
amount of $208.04; and stated that:

> This letter has been sent to you by a
> collection agency.  This is an attempt to
> collect a debt . . . . [¶]  As of the date
> of this letter you owe $208.04 on the
> above-mentioned account. . . . . [¶]  As
> required by law, a negative credit report
> reflecting on your credit record may be
> submitted to a credit-reporting agency if
> you fail to fulfill the terms of your
> credit obligations.

41.  In September 2011, Cedars-Sinai billed Kaiser
$225.00 for physician services provided to Plaintiff by
Daniel Margulies, M.D. on July 9, 2011.

42.  On or about October 7, 2011, Kaiser sent
Plaintiff and Cedars-Sinai an Explanation of Benefits,
a copy of which is attached as Exhibit H (redacted to
remove Plaintiff's personal information), which stated
that of the $225.00 billed by Cedars-Sinai for Dr.
Margulies' services, $0.00 was allowed, $225.00 was
disallowed, and that Plaintiff's copayment,
coinsurance, and deductible responsibility for these
charges was $0.00.  A separate "Notice of Denial of
Payment" sent by Kaiser to Plaintiff, a copy of which
is attached as Exhibit I (redacted to remove

Plaintiff's personal information), explained that "We will not pay for these services because:  Medical records do not support that the presenting symptoms meet the . . . definition of emergency."

43. On or about March 26, 2012, May 10, 2012, and July 10, 2012, Cedars-Sinai mailed Plaintiff "Balance Due Notices" and a "Notification of Delinquency," copies of which are attached as Exhibit J (redacted to remove Plaintiff's personal information), which restated the charge for Dr. Margulies' services for which Cedars-Sinai had previously billed Kaiser, and stated a "Patient Responsibility" of $225.00 and a "Current Balance You Owe" of $225.00.  The Balance Due Notices stated that they "represent[] charges that are due from you, as our system shows no medical insurance is outstanding for payment."  The Notification of Delinquency stated that if payment was not received within 15 days, "your account will be considered for assignment to a collection agency."

44. On or about September 14, 2012, defendant Medicredit mailed Plaintiff correspondence, a copy of which is attached as Exhibit K (redacted to remove Plaintiff's personal information), which referenced "Cedars-Sinai (PHYSICIAN BILLING);" stated an amount of $225.00; and stated that:

> This letter has been sent to you by a collection agency.  This is an attempt to collect a debt . . . . [¶]  As of the date

of this letter you owe $225.00 on the
above-mentioned account. . . . . [¶]  [A]
negative credit report reflecting on your
credit record may be submitted to a
credit-reporting agency if you fail to
fulfill the terms of your credit
obligations.

45. Cedars-Sinai's physicians, including Drs.
Pregerson, Bukur, and Margulies, are "participating"
providers in original Medicare. *See* Exhibit L (listing
all Cedars-Sinai Medical Center physicians as
participating in original Medicare).

### Cedars Anesthesia Balance Billings

46. In July 2011, Cedars Anesthesia billed Kaiser
$1,890.00 for services provided to Plaintiff at Cedars-
Sinai on July 8, 2011.

47. On or about August 17, 2011, Kaiser sent
Plaintiff and Cedars Anesthesia an Explanation of
Benefits, a true and correct copy of which is attached
as Exhibit M (redacted to remove Plaintiff's personal
information), which stated that of the $1,890.00 billed
by Cedars Anesthesia, a total of $346.14 was allowed,
$1,543.86 was disallowed, and that Plaintiff's
copayment, coinsurance, and deductible responsibility
for these charges was $0.00.  The Explanatory Remarks
stated, with respect to the first charge, that
"CONTRACTUAL PROVIDER DISCOUNT HAS BEEN APPLIED," and
with respect to the remaining charge, that "THIS

PROCEDURE IS NORMALLY INCLUDED IN THE COST OF THE
PRIMARY PROCEDURE." Kaiser remitted payment of $346.14
to Cedars Anesthesia for the allowed amount, which
payment was received by Cedars Anesthesia on or about
August 30, 2011.

48. On or about April 5, 2012, Cedars Anesthesia
mailed Plaintiff a "Financial Statement," a true and
correct copy of which is attached as Exhibit N
(redacted to remove Plaintiff's personal information),
which stated an "Amount Due" of $1,785.00, and that
"THE BALANCE DUE IS YOUR RESPONSIBIILITY."

49. On or about June 11, 2012, Cedars Anesthesia
mailed Plaintiff a letter, a true and correct copy of
which is attached as Exhibit O (redacted to remove
Plaintiff's personal information), which showed a
"Balance" of $1890.00, and stated that "This balance is
due and payable in full. This account will be turned
over to an outside agency if we do not receive payment
within (10) working days of the date of this letter."

50. On or about June 21, 2012, Cedars-Anesthesia
mailed Plaintiff a letter, a true and correct copy of
which is attached as Exhibit P (redacted to remove
Plaintiff's personal information), which stated that:

> Kaiser has rescinded it's [sic] payment
> to us stating that you were in the area
> and failed to obtain the proper
> authorization. The entire balance of
> $1,785.00 is due.

We are contracted with Kaiser, and due to our specialty we cannot and are not required to obtain proper authorization to treat you.  Your bill is due to us since you did not follow your insurance company protocol for authorization.

51. On or about June 6, 2012, July 6, 2012, August 6, 2012, September 6, 2012, and October 9, 2012, Cedars Anesthesia mailed Plaintiff "Financial Statements," true and correct copies of which are attached as Exhibit Q (redacted to remove Plaintiff's personal information), which stated an "Amount Due" of $1,890.00, and that if payment was not received within 10 days, "YOUR ACCOUNT WILL BE TURNED OVER TO AN OUTSIDE AGENCY FOR COLLECTION."

52. Cedars Anesthesia's physicians are all "participating" providers in original Medicare. *See* Exhibit R (listing all Cedars Anesthesia physicians as participating in original Medicare).

## Cedars Imaging Balance Billings

53. In July or August 2011, Cedars Imaging billed Kaiser $9,145.00 for services provided to Plaintiff at Cedars-Sinai on June 29, 2011.

54. On or about August 22, 2011, Kaiser sent Plaintiff and Cedars Imaging an Explanation of Benefits, a true and correct copy of which is attached as Exhibit S (redacted to remove Plaintiff's personal information), which stated that of the $9,145.00 billed

Complaint

by Cedars Imaging, a total of $1,617.65 was allowed, $7,527.35 was disallowed, and that Plaintiff's copayment, coinsurance, and deductible responsibility for these charges was $0.00.  The Explanatory Remarks stated, with respect to all charges, that "CONTRACTUAL PROVIDER DISCOUNT HAS BEEN APPLIED.  Kaiser remitted payment of $1,617.65 to Cedars Imaging for the allowed amount, which payment was received by Cedars Imaging on or about August 26, 2011.

55.  On or about September 1, 2011, Cedars Imaging mailed Plaintiff a statement, a true and correct copy of which is attached as Exhibit T (redacted to remove Plaintiff's personal information), showing an "Amount Due" of $498.00, and stating that "INSURANCE PAID THEIR PORTION ON THIS ACCOUNT.  YOU ARE RESPONSIBLE FOR THE BALANCE."

56.  On or about September 30, 2011, Cedars Imaging mailed Plaintiff a statement, a true and correct copy of which is attached as Exhibit U (redacted to remove Plaintiff's personal information), showing an "Amount Due" of $498.00, and stating that "YOUR ACCOUNT IS PAST DUE!!  PLEASE REMIT BALANCE OF $498.00."

57.  On or about October 31, 2011, Cedars Imaging mailed Plaintiff a statement, a true and correct copy of which is attached as Exhibit V (redacted to remove Plaintiff's personal information), showing an "Amount Due" of $498.00, and stating that:

Your account is PAST DUE.

Complaint

**Failure to provide full payment may likely require your account to be placed with a collection agency which may have negative consequences for you.**

This is your final notice.

58. In July 2011, Cedars Imaging billed Kaiser $1,782.00 for services provided to Plaintiff at Cedars-Sinai on June 29, 2011 through July 4, 2011.

59. On or about July 22, 2011, Kaiser sent Plaintiff and Cedars Imaging Explanations of Benefits, true and correct copies of which are attached as Exhibit W (redacted to remove Plaintiff's personal information), which stated that of the $1,782.00 billed by Cedars Imaging, a total of $139.78 was allowed, $1,642.22, was disallowed, and that Plaintiff's copayment, coinsurance, and deductible responsibility for these charges was $0.00.  The Explanatory Remarks stated, with respect to certain charges, that "CONTRACTUAL PROVIDER DISCOUNT HAS BEEN APPLIED, and with respect to the remaining charges, "DENIED:  THIS IS NOT A VALID MODIFIER FOR THIS CODE."  Kaiser remitted payment of $139.78 to Cedars Imaging for the allowed amount, which payment was received by Cedars Imaging on or about July 28, 2011.

60. On or about September 16, 2011, Cedars Imaging mailed Plaintiff a statement, a true and correct copy of which is attached as Exhibit X (redacted to remove

Complaint

Plaintiff's personal information), showing an "Amount Due" of $136.00.

61. On or about December 1, 2011, Cedars Imaging mailed Plaintiff a statement, a true and correct copy of which is attached as Exhibit Y (redacted to remove Plaintiff's personal information), showing an "Amount Due" of $136.00, and stating that "YOUR ACCOUNT IS PAST DUE!!  PLEASE REMIT BALANCE OF $136.00."

62.  On or about January 3, 2012, Cedars Imaging mailed Plaintiff a statement, a true and correct copy of which is attached as Exhibit Z (redacted to remove Plaintiff's personal information), showing an "Amount Due" of $136.00, and stating that:

> Your account is PAST DUE.
>
> **Failure to provide full payment may likely require your account to be placed with a collection agency which may have negative consequences for you.**
>
> This is your final notice.

63. On or about March 23, 2012, Grant & Weber mailed Plaintiff correspondence, a true and correct copy of which is attached as Exhibit AA (redacted to remove Plaintiff's personal information), which referenced "CEDARS SINAI IMAGE MED GROUP;" stated an amount of $136.00, plus interest of $9.88; and stated that:

> **You can still avoid this being reported to the Credit Bureau**

24

> If your account is not resolved, we may
> place your file with all applicable Credit
> Reporting Agencies and may pursue all
> available remedies to collect the
> referenced account.
>
> **This is an attempt to collect a debt by a debt collector.**

64. Cedars Imaging's physicians are all "participating" providers in original Medicare. *See* Exhibit BB (listing all Cedars Imaging physicians as participating in original Medicare).

## CLASS ACTION ALLEGATIONS

65. Plaintiff brings this action on behalf of herself and a Cedars-Sinai Class, defined as: All enrollees in any Medicare Advantage coordinated care plan [as defined by 42 C.F.R. § 422.4(a)(1)] who, on or after October 25, 2008, were balance billed [as defined by 42 C.F.R. § 422.2] by Cedars-Sinai, Cedars Anesthesia, or Cedars Imaging for physician or other health care services.

66. Plaintiff also brings this action on behalf of an Outsource Group Class, defined as: All enrollees in any Medicare Advantage coordinated care plan [as defined by 42 C.F.R. § 422.4(a)(1)] from whom, on or after October 25, 2008, Outsource Group and/or Medicredit collected or attempted to collect any balance billing [as defined by 42 C.F.R. § 422.2].

67. Plaintiff also brings this action on behalf of an Outsource Group California Subclass, defined as all members of the Outsource Group Class who are residents of the State of California.

68. Plaintiff also brings this action on behalf of a Grant & Weber Class, defined as: All enrollees in any Medicare Advantage coordinated care plan [as defined by 42 C.F.R. § 422.4(a)(1)] from whom, on or after October 25, 2008, Grant & Weber collected or attempted to collect any balance billing [as defined by 42 C.F.R. § 422.2].

69. Plaintiff also brings this action on behalf of a Grant & Weber California Subclass, defined as all members of the Grant & Weber Class who are residents of the State of California.

70. Excluded from the Classes are the officers, directors, and employees of any Defendant, any judicial officer presiding over this action, and the members of his or her immediate family and judicial staff.

71. Certification of the Classes is sought pursuant to Rules 23(a), 23(b)(1), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure.

72. The Classes are so numerous that joinder of all members is impracticable. According to CMS, as of July 2012, there were approximately 194,950 enrollees in Los Angeles County in Plaintiff's Medicare Advantage plan alone, or approximately 2% of the population (and approximately 18% of the Medicare-eligible population).

Based on information provided by Cedars-Sinai, there were approximately 320,000 visits to its Emergency Department over the proposed four-year class period.  A 2007 study commissioned by the California Association of Health Plans concluded that 1.76 million Californians who had visited emergency rooms in the previous two years received $528 million in balance bills, and that 56% of recipients paid them.

73.  There are numerous questions of law and fact common to the members of the Classes which predominate over any questions affecting only individual members, including:  (a) whether Cedars-Sinai, Cedars Anesthesia, and/or Cedars Imaging balance bill enrollees of Medicare Advantage coordinated care plans; (b) whether Outsource Group, Medicredit, and/or Grant & Weber collect or attempt to collect balance billing from enrollees of Medicare Advantage coordinated care plans; (c) whether such billing and collection efforts constitute unlawful and/or fraudulent business practices in violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; (d) whether such billing and collection efforts violate the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; (e) whether such collection efforts violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*; and (f) whether Plaintiff and the Classes are entitled to damages, declaratory, and injunctive relief for these violations.

Complaint

74. Plaintiff's claims are typical of the claims of the Classes, as Defendants' liability to each Class member is predicated on the same unlawful business practices as Defendants' liability to Plaintiff.

75. Plaintiff will fairly and adequately protect the interests of the Classes, as she has no conflict of interest with the other members of the Classes, and she has retained counsel experienced in complex consumer class actions to represent their interests.

76. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants.

77. Defendants have acted on grounds that apply generally to the Classes, so that final injunctive and declaratory relief is appropriate respecting the Classes as a whole.

78. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy, in that the costs of litigation would likely exceed the potential recovery by individual Class members, and there are no unusual difficulties in managing the litigation as a class action.

Complaint

**FIRST CLAIM FOR VIOLATIONS OF UNFAIR COMPETITION LAW**

(On Behalf of the Cedars-Sinai Class, the Outsource Group California Subclass, and the Grant & Weber California Subclass, Against All Defendants)

79. The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

80. This claim is asserted by Plaintiff on behalf of the Cedars-Sinai Class, the Outsource Group California Subclass, and the Grant & Weber California Subclass, against all Defendants.

81. Cedars-Sinai's, Cedars Anesthesia's, and Cedars Imaging's practice of balance billing Plaintiff and the other members of the Cedars-Sinai Class constitutes an unlawful business practice in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.

82. Cedars-Sinai's practice of falsely representing to Plaintiff and the members of the Cedars-Sinai Class that they have a "Patient Responsibility" and/or "Current Balance You Owe" for balance billing constitutes a fraudulent business practice in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.

83. Cedars Anesthesia's practice of falsely representing to Plaintiff and the members of the Cedars-Sinai Class that "THE BALANCE DUE IS YOUR RESPONSIBILITY" and "This balance is due and payable in full" for balance billing constitutes a fraudulent

business practice in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

84. Cedars Imaging's practice of falsely representing to Plaintiff and the members of the Cedars-Sinai Class that "YOU ARE RESPONSIBLE FOR THE BALANCE" AND "YOUR ACCOUNT IS PAST DUE!!" for balance billing constitutes a fraudulent business practice in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

85. Medicredit's and Outsource Group's practice of collecting or attempting to collect balance billing from Plaintiff and the other members of the Outsource Group California Subclass constitutes an unlawful business practice in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

86. Grant & Weber's practice of collecting or attempting to collect balance billing from Plaintiff and the other members of the Grant & Weber California Subclass constitutes an unlawful business practice in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

87. Medicredit's and Outsource Group's practice of falsely representing to Plaintiff and the members of the Outsource Group California Subclass that they "owe" or are otherwise obligated to pay balance billing constitutes a fraudulent business practice in violation

Complaint

of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

88. Grant & Weber's practice of falsely representing to Plaintiff and the members of the Grant & Weber California Subclass that they owe a "debt" for or are otherwise obligated to pay balance billing constitutes a fraudulent business practice in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

89. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining these violations and restoring to the members of the Cedars-Sinai Class, the Outsource Group California Subclass, and the Grant & Weber California Subclass any amounts acquired by Defendants as a result of these violations.

## SECOND CLAIM FOR VIOLATIONS
## OF CONSUMER LEGAL REMEDIES ACT

(On Behalf of the Cedars-Sinai Class, the Outsource Group California Subclass, and the Grant & Weber California Subclass, Against All Defendants)

90. The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

91. This claim is asserted by Plaintiff on behalf of the Cedars-Sinai Class, the Outsource Group California Subclass, and the Grant & Weber California Subclass, against all Defendants.

92. Plaintiff and the other members of the Cedars-Sinai Class, the Outsource Group California Subclass, and the Grant & Weber California Subclass are "consumers" as defined in Cal. Civ. Code § 1761(d).

93. The physician and/or other health care services provided to Plaintiff and the other members of the Cedars-Sinai Class, the Outsource Group California Subclass, and the Grant & Weber California Subclass are "services" as defined in Cal. Civ. Code § 1761(b).

94. Plaintiff and the other members of the Cedars-Sinai Class, the Outsource Group California Subclass, and the Grant & Weber California Subclass are "senior citizens" as defined in Cal. Civ. Code § 1761(f).

95. Cedars-Sinai's practice of falsely representing to Plaintiff and the members of the Cedars-Sinai Class that they have a "Patient Responsibility" and/or "Current Balance You Owe" for balance billing violates Cal. Civ. Code § 1770(a)(14), which proscribes "[r]epresenting that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law."

96. Cedars Anesthesia's practice of falsely representing to Plaintiff and the members of the Cedars-Sinai Class that "THE BALANCE DUE IS YOUR RESPONSIBILITY" and "This balance is due and payable in full" for balance billing violates Cal. Civ. Code § 1770(a)(14).

Complaint

97. Cedars Imaging's practice of falsely representing to Plaintiff and the members of the Cedars-Sinai Class that "YOU ARE RESPONSIBLE FOR THE BALANCE" AND "YOUR ACCOUNT IS PAST DUE!!" for balance billing violates Cal. Civ. Code § 1770(a)(14).

98. Medicredit's and the Outsource Group's practice of sending collection notices to members of the Outsource Group California Subclass stating that they "owe" or are otherwise obligated to pay balance billing violates Cal. Civ. Code § 1770(a)(14).

99. Grant & Weber's practice of sending collection notices to members of the Grant & Weber California Subclass stating that they owe a "debt" for or are otherwise obligated to pay balance billing violates Cal. Civ. Code § 1770(a)(14).

100. Plaintiff seeks an order enjoining Defendants from the violations of Cal. Civ. Code § 1770(a)(14) alleged herein.

101. On October 23, 2012, Plaintiff served the notice required by Cal. Civ. Code § 1782(a) on each of the Defendants, enclosing a copy of this Complaint, and demanding that the Defendants cease the violations of Cal. Civ. Code § 1770(a)(14) alleged herein, and restore to the members of the Cedars-Sinai Class, the Outsource Group California Subclass, and the Grant & Weber California Subclass any amounts wrongfully collected.

102. Pursuant to Cal. Civ. Code § 1782(d), if Defendants have not complied with these demands within 30 days, Plaintiff will amend this Complaint to seek damages on behalf of the Cedars-Sinai Class, the Outsource Group California Subclass, and the Grant & Weber California Subclass, as provided in Cal. Civ. Code § 1780(a) and (b).

103. The affidavit required by Cal. Civ. Code § 1780(d) is attached as Exhibit CC and filed herewith.

## THIRD CLAIM FOR VIOLATIONS OF
## FAIR DEBT COLLECTION PRACTICES ACT

(On Behalf of the Outsource Group Class and the Grant & Weber Class, Against Defendants Medicredit, Outsource Group, and Grant & Weber)

104. The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

105. This claim is asserted by Plaintiff on behalf of the Outsource Group Class and the Grant & Weber Class, against defendants Medicredit, Outsource Group, and Grant & Weber.

106. Plaintiff and the other members of the Outsource Group Class and the Grant & Weber Class are "consumers" as defined in 15 U.S.C. §1692a(3).

107. The balance billing amounts that Medicredit, Outsource Group, and Grant & Weber collected or attempted to collect from the members of the Outsource

Complaint

Group Class and Grant & Weber Class are "debts" as defined in 15 U.S.C. § 1692a(5).

108. Medicredit, Outsource Group, and Grant & Weber are "debt collectors" as defined in 15 U.S.C. § 1692a(6).

109. 15 U.S.C. § 1692f provides that:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> > (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

110. There is no agreement obligating Plaintiff or any member of the Outsource Group Class or Grant & Weber Class to pay: (a) balance billing; or (b) any interest, fee, charge, or expense incidental to such balance billing.  The collection of any such amounts is prohibited by law.

111. Outsource Group and its wholly-owned subsidiary, Medicredit, are engaged exclusively in health care collections, and tout their extensive experience, expertise, and technological sophistication

in ensuring compliance with all applicable federal and state regulations.  On its website, Outsource Group states that it is "the only independent business of significant scale that provides end-to-end healthcare revenue cycle management solutions," and that [a]pproximately one in every six hospitals in this country chooses The Outsource Group to improve its financial performance."

112. Grant & Weber specializes in health care collections.  On its website, Grant & Weber states that it "has established a reputation as a leading authority in billing, follow up, subrogation and collection services" in the healthcare industry.

113. Despite their close working relationships with their clients, their expertise in healthcare collections, and the significant resources at their disposal, Medicredit, Outsource Group, and Grant & Weber have not established procedures reasonably adapted to avoid impermissible balance billing of enrollees of Medicare Advantage coordinated care plans.

114. Pursuant to 15 U.S.C. § 1692k(a), Plaintiff seeks:  (a) actual damages; (b) statutory damages of $1,000 from each of Medicredit, Outsource Group, and Grant & Weber; (c) for all other members of the Outsource Group Class, from each of Medicredit and Outsource Group, statutory damages of the lesser of $500,000 or one percent of their net worth; (d) for all other members of the Grant & Weber Class, statutory

damages of the lesser of $500,000 or one percent of the net worth of Grant & Weber; and (e) reasonable attorney's fees and costs.

## FOURTH CLAIM FOR DECLARATORY RELIEF

(On Behalf of the Cedars-Sinai Class, the Outsource Group Class, and the Grant & Weber Class, Against All Defendants)

115. The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

116. This claim is asserted by Plaintiff on behalf of the Cedars-Sinai Class, the Outsource Group Class, and the Grant & Weber Class, against all Defendants.

117. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Plaintiff seeks: (a) a declaration that Cedars-Sinai's, Cedars Anesthesia's, and Cedars Imaging's practice of balance billing enrollees of Medicare Advantage coordinated care plans violates federal law; and (b) an order enjoining such violations.

118. Plaintiff also seeks: (a) a declaration that Medicredit's, Outsource Group's, and Grant & Weber's collection or attempted collection of balance billing from enrollees of Medicare Advantage coordinated care plans violates federal law; and (b) an order enjoining such violations.

Complaint

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1.  An order enjoining Defendants from continuing the unlawful business practices alleged herein;

2.  An order restoring to the members of the Classes any amounts wrongfully acquired from them from Defendants;

3.  For compensatory damages;

4.  For statutory damages;

5.  For attorney's fees and costs, as allowed by statute and Cal. Govt. Code § 1021.5; and

6.  For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims so triable.


Dated:   October 23, 2012

Barry Himmelstein
barry@himmellaw.com
HIMMELSTEIN LAW NETWORK
2000 Powell St.
Suite 1605
Emeryville, CA 94608-1861
510-450-0782 (phone)
510-380-6147 (fax)

Attorney for Plaintiff
Lizabeth Hoffman

38

Complaint